**No. 3725**

**Second Circuit**

**GILLON v. MARTIN**
**(L. C. GRAVES, CO., Intervener)**

(December 23, 1930.  Opinion and Decree.)
(January 27, 1931.  Rehearing Refused.)

J. Rush Wimberly, of Arcadia, attorney for plaintiff, appellee.

Goff & Barnette, of Arcadia, attorneys for intervener, appellant.

WEBB, J.  Plaintiff, E. B. Gillon, brought this action against defendant, Henry Martin, to recover judgment for the value of goods alleged to have been sold and furnished defendant to make a crop, on which defendant asserted a privilege, and obtained a writ of sequestration under which, among other property, there was seized four bales of cotton which had been deposited by defendant in the Ringgold warehouse.

Defendant answered, admitting the indebtedness, but claiming credit for amounts which he alleged plaintiff had not allowed credit, and the L. C. Graves Company, a corporation, intervened, alleging that it was the holder and owner of warehouse receipts issued to defendant by the Ringgold warehouse, which it had acquired from defendant in due course and for value, and that the pretended seizure of the cotton was illegal, null, and void, having been made in violation of a prohibitory law.

Intervener further alleged that it had furnished defendant with merchandise, etc., to make a crop, and that it had a privilege on the crop raised by Martin, and intervener prayed for judgment against plaintiff and defendant, decreeing intervener to be the owner of the four bales of cotton seized, and decreeing the seizure of the cotton to have been null and void, and for judgment reserving the rights of intervener to assert any privilege it might have against the proceeds of the property seized under the writ of sequestration and sold under any judgment which might be obtained by plaintiff against defendant.

Plaintiff, in answer to the intervention, denied that intervener was the holder or owner of the warehouse receipts in due course or for a valuable consideration, and alleged that the claim of intervener was fictitious and fraudulent, and that intervener was merely an interposed party to aid defendant to defraud plaintiff.

On trial, judgment was rendered in favor of plaintiff against defendant for a certain amount, with recognition of a privilege on the property seized, to secure the payment of the judgment, and rejecting the demands of the intervener, reserving to intervener the privilege to assert whatever rights it might have had against Martin or the proceeds of any of the property seized and sold under the judgment awarded plaintiff.

The intervener alone appeals, and in support of its appeal appellant says that the rights of the parties to this property are governed altogether by Act No. 221 of 1908, known as the Uniform Warehouse Receipt Act, and, although counsel refers to section 25 of the statute which forbids the seizure of property deposited in a public warehouse against which a negotiable receipt has been issued, and defendant especially pleaded that the seizure was illegal, in view of the statement made and of the fact that defendant obtained the seizure of the cotton which was sequestered, we assume that appellant has waived any right to have the question of the validity of the seizure determined, and takes the position that the sole question to be determined is whether or not intervener was the owner or pledgee of the warehouse receipts.

From that point of view, counsel must assume that, if appellant was the owner or pledgee of the receipts, its rights thereunder would be superior to the rights of plaintiff, who had a privilege on the crop to secure his claim for supplies furnished to make the crop (article 3217, par. 9, Crop Liens, Civil Code), but such is not the case, at least as between the pledgee and the furnisher of supplies to make the crop. Purity Feed Mills Co. v. Moore, 152 La. 393, 93 So. 196, 197.

There is not any doubt that under the evidence intervener was not the owner of the warehouse receipts, and, conceding that it was a pledgee, which is not without doubt, the plaintiff's right as against the cotton was superior to any right which intervener had as pledgee of the warehouse receipts and the evidence conclusively shows that plaintiff had furnished supplies to make the crop seized.

In Purity Feed Mills Co. v. Moore, supra, where the rights of a furnisher of supplies against the crop, and the pledgee of a warehouse receipt given for a part of the crop when deposited in a public warehouse, were considered, the court said:

" 'Privileges on movable property,' says the Constitution * * * 'shall exist without registration of same, except in such cases as may be prescribed by law.' In the present class of privileges, we have seen, the Legislature has not acted, and they therefore have full effect without recordation. If the law were such as contended by intervener, the furnishing of supplies would be a very hazardous business, for it would be a very easy matter for the producer to deposit his goods in a warehouse and negotiate the receipts, or dispose of them in a way to defeat the furnisher's lien."

In the present case, however, the evidence does not show that the warehouse receipts were pledged to the intervener, but merely shows that the receipts were delivered to intervener, with authority to sell same and apply the proceeds on the payment of debts due to third persons, and the balance to a debt due to intervener.

The judgment appealed from is therefore affirmed.